UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CHERYL BROWN, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )  No. 1:12-cv-286-JAW |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,*[1] | ) |
| | ) |
|     *Defendant* | ) |

### *REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy as of her date last insured for SSD benefits, June 30, 2006. The plaintiff seeks reversal and remand on the bases that the administrative law judge (i) wrongly deemed both her physical and mental impairments nonsevere and (ii) erred in rejecting opinions of two examining psychologists, William M. DiTullio, Ed.D., and Jonathan Siegel, Ph.D., and a treating physician, Ilsa Shulman, M.D. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 5-17. Because the administrative law judge erred in finding no severe physical impairment and in rejecting the opinion of Dr. Shulman, I recommend reversal and remand.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2013, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

This case returns to this court following an April 25, 2011, reversal of a December 23, 2009, adverse decision and remand to the commissioner for further proceedings. *See* Record at 9-15, 565-75. Following remand, the administrative law judge convened a March 29, 2012, hearing during which he heard the testimony of the plaintiff, her daughter, and a mental health expert, Ira H. Hymoff, Ph.D. *See id*. at 511-12; *see also id*. at 638.

On April 27, 2012, the administrative law judge issued the decision at issue, finding in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the plaintiff met the insured status requirements of the Social Security Act through June 30, 2006, Finding 1, Record at 498; that, through her date last insured, she had medically determinable impairments of diabetes mellitus, degenerative disc disease at L5/S1, abdominal pain, bloating, and depression, Finding 3, *id*. at 499; that, through her date last insured, she did not have a severe impairment or combination of impairments, Finding 4, *id*.; and that she, therefore, was not disabled from September 1, 2004, her alleged disability onset date, through June 30, 2006, her date last insured, Finding 5, *id*. at 503.[3] The Appeals Council declined to assume jurisdiction of the case after remand, *id*. at 486-88, making the decision the final determination of the commissioner, 20 C.F.R. § 404.984(a)-(b); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must

---

[3] The administrative law judge erroneously stated that the plaintiff alleged disability commencing on September 1, 2004. During a hearing held on November 20, 2009, she amended her alleged onset date to June 1, 2006. *See* Statement of Errors at 1 n.1; Record at 19. Nothing turns on the error.

be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Finding of Nonsevere Physical Impairment

On remand, the administrative law judge noted that the court had not disturbed his 2009 finding that the plaintiff had no severe physical impairment. *See* Record at 496. Hence, he adopted and incorporated by reference that portion of his 2009 decision bearing on the plaintiff's physical impairments. *See id.* However, he acknowledged that, post-remand, the plaintiff had submitted (i) additional evidence, including three exhibits dating from the time period prior to her date last insured, Exhibits 36F, 37F, and 40F, and (ii) new opinion evidence. *See id.* at 500-03.

With respect to the three listed exhibits, he identified Exhibit 37F as duplicative of Exhibit 2F, which had been considered in the previous decision. *See id.* at 500. He noted that

Exhibit 40F reflected that the plaintiff underwent surgery for pelvic relaxation, cyctocele, and stress urinary incontinence in September 2000. *See id*. Finally, he observed that Exhibit 36F reflected that she underwent a diagnostic laparoscopy with liver biopsy on April 18, 2002, which revealed the existence of adhesions and an enlarged liver, but he stated that there was "no additional discussion or mention of these findings in the record." *Id*. He deemed all three exhibits to be "of little significance" because the court upheld the finding of a nonsevere physical condition and stated that, in view of the age of the newly submitted exhibits (created in 2000 and 2002), they "plainly should have been submitted before the prior hearing on November 30, 2009." *Id*. He did not mention additional post-remand evidence, including notes in Exhibit 38F documenting a March 23, 2010, laparoscopy and lysis of adhesions performed by surgeon Michael Starks, M.D. *See id*. at 500, 738-39.

With respect to opinion evidence, he considered, but afforded little weight to, a January 13, 2012, assessment of the plaintiff's physical residual functional capacity ("RFC") by Dr. Shulman, explaining that:

1. Dr. Shulman "fail[ed] to make any attempt to differentiate what limitations apply to the [plaintiff] now as opposed to what existed before the date last insured." *Id*. at 501.

2. Dr. Shulman diagnosed no medically determinable impairment that might cause the plaintiff's condition. *See id*. She limited the plaintiff to work of less than a sedentary exertional level based on "low back pain," but back pain is a symptom, not a medically determinable impairment. *See id*. She assessed a number of nonexertional limitations, but the

4

limitations appeared to be based only on the plaintiff's subjective complaints, and Dr. Shulman noted that there were no medical findings to support/explain those limitations. *See id*.[4]

3. In light of the scope of the court's remand decision, it was unclear that this evidence required any consideration. *See id*.

As the plaintiff argues, *see* Statement of Errors at 6-9, 16-17, the administrative law judge (i) misconstrued the court's remand decision to preclude reconsideration on remand of the severity of her physical impairments, (ii) erroneously relied on his 2009 findings, in particular his adoption of an October 9, 2008, physical RFC assessment by Disability Determination Services ("DDS") nonexamining consultant Donald Trumbull, M.D., and rejection of a 2009 RFC opinion by Dr. Schulman, when post-remand evidence called those findings into question, and (iii) failed to supply good reasons for rejecting the 2012 opinion of Dr. Shulman, a treating physician. As a result, his finding on remand that her physical impairments were nonsevere is unsupported by substantial evidence.

### 1. Mandate Rule

> Under the 'mandate rule,' administrative agencies generally are obligated to follow the mandates set forth in a federal court decision. The administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order, although he or she may act in ways that go beyond, but are not inconsistent with, the district court's opinion.

*Steele v. Astrue*, No. 2:09-cv-548-DBH, 2011 WL 4635136, at *1 (D. Me. Oct. 5, 2011) (rec. dec., *aff'd* Oct. 25, 2011) (citations and internal punctuation omitted). In reversing the 2009

---

[4] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2012), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id*.

decision and remanding this case, this court explained that it found reversible error as to the administrative law judge's handling of the plaintiff's mental impairments, but not her physical impairments. *See id*. at 570-75. Yet, it did not preclude reconsideration of the severity of her physical impairments. *See id*. Indeed, it contemplated a possible need to consider the impact of the totality of her impairments, both mental and physical. *See id*. at 570 ("For the reasons that follow, this would not be a case for remand if the presentation were limited to physical impairments, but Brown's objections related to the treatment given to her mental impairments raise a remand-worthy issue and, depending on further developments, there may be a need for the Commissioner to re-evaluate Brown's Title II claim in light of the combined impact of all impairments, both mental and physical."); *see also id*. at 573 ("if there is a severe mental impairment there is also room for the physical impairments to influence any resulting residual functional capacity assessment"). It reversed the 2009 decision and remanded the case "for additional proceedings consistent with the foregoing discussion." *Id*. at 575; *see also id.* at 565.

Thus, the court's remand decision did not preclude the administrative law judge from taking new evidence as to the plaintiff's physical impairments or reconsidering the severity of those impairments in view of the totality of the evidence on remand.

### 2. Impact of New Medical Evidence

In his 2009 decision, the administrative law judge rejected a 2009 RFC opinion of Dr. Shulman limiting the plaintiff to work of less than a sedentary exertional level based largely on her complaints of bloating and abdominal pain. *See id*. at 14. He explained that he found Dr. Shulman's opinion inconsistent with her inability to explain the plaintiff's abdominal complaints and with the medical record as a whole, especially Dr. Shulman's own treatment records. *See id*. He adopted Dr. Trumbull's opinion that there was no medical evidence of record supporting the

existence of a severe physical impairment as of the plaintiff's date last insured.  *See id*. at 14, 268.

As the plaintiff points out, *see* Statement of Errors at 8-9, post-remand evidence calls these findings into question.  At the time of Dr. Shulman's 2009 RFC opinion, she was unable to identify a cause for the lower abdominal pain and bloating that the plaintiff claimed to have suffered since undergoing a hysterectomy in 1998.  *See* Record at 472 (October 6, 2009, progress note of Dr. Shulman noting that, because of the unclear etiology of the plaintiff's unusual lower abdominal pain, it was "difficult to give an appropriately informed input into the etiology, possible treatment and any degree of disability related to the abdominal pain from a medical standpoint").  However, Dr. Shulman noted that she had made referrals for the plaintiff to undergo further diagnostic testing and that:

> It is remotely possible that [the plaintiff] has problems from adhesions or possible hernia.  The hernia is less likely as this is consistently bilateral lower abdominal pain.  If she has an unremarkable CT and nothing unusual on her gynecologic exam, I would ask that GI evaluate the [plaintiff] especially as she is claiming this is causing significant disability.  After that information is available, I would be better informed to make further comment on her problem and legitimate disability.

*Id*.

Post-remand, the plaintiff supplied evidence documenting that, on March 23, 2010, she underwent diagnostic laparoscopy during which Dr. Starks found "adhesions to the lower abdominal wall in the vicinity of the area where the [plaintiff] reported her pain" as well as "adhesions to the hysterectomy site from the sigmoid colon."  *Id*. at 738.  Dr. Starks removed the adhesions, *see id*. at 738-39, following which Dr. Shulman noted significant improvement in the plaintiff's chronic abdominal pain, *see id*. at 848.  The relief obtained from the surgery, as in the case of a similar surgery removing abdominal adhesions on April 18, 2002, reportedly was not

long-lasting. At her March 29, 2012, hearing, the plaintiff testified that neither of the adhesion-removal surgeries had solved the abdominal pain problem. *See id*. at 518; *see also id*. at 29-30, 367-70. However, regardless of the efficacy of the cure, the 2010 procedure arguably supplied a cause for the claimed chronic pain and bloating. This information was unavailable to Dr. Trumbull when he crafted his RFC opinion in 2008 or to Dr. Shulman when she crafted hers in 2009.[5] On remand, the administrative law judge did not appreciate the seeming significance of these findings. As the plaintiff points out, *see* Statement of Errors at 8, he erroneously stated that, following the April 18, 2002, surgery, there was "no additional discussion or mention of these findings [of, *inter alia*, adhesions] in the record[,]" *id.* at 500.

During oral argument, counsel for the commissioner contended that the plaintiff waived any point concerning post-remand medical evidence by failing (i) to submit, in timely fashion, the "new" evidence that was in existence prior to the administrative law judge's 2009 decision and (ii) to articulate how the post-remand evidence could have been outcome-determinative. For the latter proposition, he cited *Bowman v. Colvin*, No. 1:12-CV-246-GZS, 2013 WL 1907454, at *6 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 8, 2013). He also disputed the significance of the 2010 Starks evidence, arguing that the plaintiff had failed to adduce evidence that the adhesions removed in 2010 had any bearing on her condition as of her date last insured, June 30, 2006, or even were in existence as of that date. Finally, he contended, in relevant part, that Dr. Shulman's attribution in 2009 of the plaintiff's 2006 limitations largely to abdominal pain and bloating, and her attribution in 2012 of those limitations largely to back pain, undermined the credibility of both the 2009 and 2012 opinions.

---

[5] Notes of the April 18, 2002, surgery documenting the discovery and removal of adhesions at an umbilical incision site were part of the record prior to the issuance of the administrative law judge's 2009 decision. *See* Record at 367-70. However, insofar as appears, they were submitted after Dr. Trumbull prepared his RFC opinion. He makes no mention of them. *See id*. at 268.

As to the first point, there is no waiver with respect to the critical piece of evidence, detailing the 2010 surgery by Dr. Starks. That evidence clearly was not in existence as of the time of the 2009 decision. While Exhibit 36F, reflecting the plaintiff's 2002 laparoscopy, *see* Record at 675-77, was indeed untimely submitted, the plaintiff had timely submitted other records detailing that surgery, *see id*. at 367-70, rendering the untimely submission immaterial.

As to the second point, the plaintiff adequately identified the new evidence on which she relied and explained why it mattered: namely, that it buttressed Dr. Shulman's 2009 opinion attributing limitations to abdominal pain and undermined reliance on Dr. Trumbull's 2008 opinion. *See* Statement of Errors at 8-9. In *Bowman*, by contrast, the plaintiff did not rebut the argument of counsel for the commissioner that the post-remand evidence was either cumulative or did not suggest functional limitations. *See Bowman*, 2013 WL 1907454, at *6.[6]

As to the third point, counsel for the commissioner is correct that it is impossible for a layperson to know whether the 2010 Starks evidence relates to the plaintiff's complaints of abdominal pain and bloating in 2006. However, it is plausible that it might, *see* Record at 472 (October 2009 note of Dr. Shulman stating that adhesions might be causing claimed abdominal symptoms), and that a treating source or medical expert could have shed light on the matter. Yet, the administrative law judge simply ignored the new evidence, undermining his reliance on his 2009 finding that the plaintiff had no severe physical impairment.

Finally, whatever the merit of the fourth point, it was not a basis on which the administrative law judge rejected either the 2009 or 2012 Shulman opinions. *See id*. at 501.

---

[6] In addition, at oral argument, in response to my question as to whether the cited errors in assessing the plaintiff's physical impairments were outcome-determinative, the plaintiff's counsel noted that a person of the plaintiff's age with a sedentary (or lower) exertional work capacity, as found by Dr. Shulman, would be deemed disabled pursuant to the so-called "Grid," Appendix 2 to 20 C.F.R. Part 404, Subpart P. The plaintiff, who was more than 55 years old in June 2006, *see* Record at 21, would be disabled pursuant to Table No. 1 of the Grid, if she were limited to sedentary work and lacked transferable skills. *See* Grid §§ 201.01-201.08.

Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker." *Clark v. Astrue,* Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd* Aug. 9, 2010).

To the extent that the administrative law judge incorporated into his 2012 decision his 2009 finding that the plaintiff's physical impairments were nonsevere based on his rejection of the 2009 Shulman RFC opinion and adoption of the 2008 Trumbull RFC opinion, post-remand evidence renders his 2012 decision unsupported by substantial evidence.

### 3. Rejection of 2012 Shulman Opinion

An administrative law judge must supply "good reasons" for the rejection of a treating source opinion. *See* 20 C.F.R. § 404.1527(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."). The plaintiff persuasively argues that the administrative law judge failed to do so in rejecting the 2012 Shulman RFC opinion. *See* Statement of Errors at 7-8, 16-17.

First, while the administrative law judge faulted Dr. Shulman for failing to differentiate between limitations existing as of June 30, 2006, and those existing as of the date of her assessment, *see* Record at 501, there was no need for Dr. Shulman to do so. She stated that the assessed restrictions applied at all times from on or before June 30, 2006, to the present. *See id*. at 458. As the plaintiff suggests, *see* Statement of Errors at 16-17, if the administrative law judge deemed this unclear, he had a duty to recontact Dr. Shulman for clarification. *See* Social Security Ruling 96–5p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2012), at 127 (the duty to recontact a treating source for clarification as to an RFC

opinion is triggered when (i) "the evidence does not support a treating source's opinion" and (ii) "the adjudicator cannot ascertain the basis of the opinion from the case record").

Second, the administrative law judge erroneously found that Dr. Shulman identified no medically determinable impairment that could account for the plaintiff's back pain. *See* Record at 501. Dr. Shulman wrote, "Low back pain s/p MRI 8/11[,]" *id*. at 904, an apparent reference to the results of an MRI performed in August 2011 that revealed the presence of mild degenerative disc disease predominantly at L5-S1, as well as an L4-5 disc protrusion abutting the L4 nerve root, *see id*. at 684. In addition, the administrative law judge himself found that, as of her date last insured, the plaintiff had a medically determinable impairment of degenerative disc disease at L5/S1. *See* Finding 3, *id*. at 499.[7] The administrative law judge also mischaracterized Dr. Shulman as having indicated that there were no medical findings to support or explain *any* of the assessed nonexertional limitations. *See id.* at 501. In fact, Dr. Shulman so qualified her findings only as to manipulative limitations. *See id*. at 905. She attributed the plaintiff's postural and environmental limitations to back pain. *See id*. at 904, 906.

Third, as discussed above, the court's remand order did not preclude, or render irrelevant, post-remand evidence bearing on the severity of the plaintiff's physical impairments as of her date last insured.

For all of these reasons, the administrative law judge's finding that the plaintiff did not have a severe physical impairment as of June 30, 2006, is unsupported by substantial evidence. The error is not harmless. As explained above, a person of the plaintiff's age as of her date last insured without transferable skills and with the exertional restrictions assessed by Dr. Shulman

---

[7] As the plaintiff points out, *see* Statement of Errors at 8, an x-ray taken of her lumbar spine on August 24, 2006, only two months after her date last insured, revealed degenerative changes at L5-S1, *see* Record at 231.

11

would be deemed disabled pursuant to the Grid. Reversal and remand for further proceedings are warranted on this basis.

### B. Finding of Nonsevere Mental Impairment

The court reversed the 2009 decision and remanded this case on the basis of the administrative law judge's failure to refer the plaintiff's file to a psychiatrist or psychologist for review pursuant to 42 U.S.C. § 421(h), Record at 571-73, which provides that "[a]n initial determination . . . that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment[,]" 42 U.S.C. § 421(h).

The plaintiff contends that the 2012 finding of a nonsevere mental impairment is unsupported by substantial evidence because the administrative law judge:

1. Wrongly rejected the opinions of Drs. DiTullio and Siegel, both examining psychologists, and relied on testimony of Dr. Hymoff that was too equivocal to support a finding of nonseverity, *see* Statement of Errors at 9-10, 13-17; and

2. Failed, despite the court's instructions on remand, to ensure that a psychiatrist or psychologist completed a psychiatric review technique form ("PRTF") as required by 42 U.S.C. § 421(h) and 20 C.F.R. § 404.1520a, *see id*. at 11-13.

I find no error in the handling of the DiTullio and Siegel opinions, and no reversible error with respect to compliance with section 421(h).

Dr. DiTullio performed a mental status evaluation of the plaintiff on October 20, 2009, on the basis of which he completed a report and a mental RFC assessment, both of which were

12

part of the record prior to remand. *See* Record at 459-61, 481-82. He found marked limitations in the plaintiff's abilities to (i) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods and (ii) interact appropriately with the general public. *See id*. at 481. Asked to provide a diagnosis and brief indication of what medical or clinical findings supported that assessment, he stated:

> Needs to rest frequently + for long periods because of abdominal pain + bloating.
> Anxious re: general public but only in big crowds.
> Diagnostic Impression: Dysthymic Disorder (300.4 DSM-IV)
>         Anxiety Disorder with social phobia + occasional panic attacks (300.00).

*Id*. at 482. The report contained a typed paragraph above his signature stating:

> Based on my education, training and experience and my evaluation of [the plaintiff] including interviews with her, testing and review of her records, the foregoing represents my professional opinion as to [her] psychological limitations from 9/1/04 to the present.

*Id*.

  Dr. Siegel conducted a clinical interview and mental status examination of the plaintiff on February 14, 2012. *See id*. at 907. Based on his interview and examination, as well as a review of records made available by the office of the plaintiff's attorney, he prepared a report and a mental RFC assessment dated February 21, 2012. *See id*. at 907-14. He found a marked limitation in the plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *See id*. at 913. Asked to provide a diagnosis and brief indication of what medical or clinical findings supported that assessment, he cross-referenced his accompanying report. *See id*. at 914. The report contained a typed paragraph above his signature stating:

> Based on my education, training and experience and my evaluation of [the plaintiff] including interviews with her, testing and review of her records, the foregoing represents my professional opinion as to [her] psychological limitations from 6/30/06 to the present.

*Id.*

The administrative law judge gave no weight to the DiTullio opinion because (i) it appeared to be based on testing and evaluation performed in October 2009 and did not reflect the plaintiff's condition in 2006 or at any other time prior to October 2009 and, (ii) with respect to abdominal pain and bloating, was based on the plaintiff's subjective complaints and was outside the area of Dr. DiTullio's expertise. *See id*. at 502.

He gave little weight to the Siegel opinion because it contradicted the medical evidence of record and was internally inconsistent with respect to functional limitation. *See id*. at 502. Specifically, he observed that (i) Dr. Siegel's evaluation addressed the then-current period and was not relevant to a period six years earlier, despite his "ad hoc opinion that she has functioned at the same [level] over the last six years[,]" and, (ii) despite his finding of marked impairment, Dr. Siegel described "little to no functional limitation, which is likely why [the plaintiff] never sought counseling or any other treatment beyond medication." *Id*. at 501-02.

The administrative law judge gave great weight to Dr. Hymoff's testimony, observing:

Dr. Hymoff testified that there was almost nothing in the medical evidence regarding depression until the psychological evaluations after her date last insured, in 2009 and 2012 respectively. When the [plaintiff] went for her evaluations in 2012, depression and/or anxiety are mentioned. However, before her date last insured, depression is sometimes mentioned but usually in concert with or in reaction to her physical symptoms. Dr. Hymoff testified that the [plaintiff] has used Zoloft but it is a common medication, prescribed by a general medical provider and can be used for a variety of reasons. Its use does not tell us anything about the extent of functional limitations. He commented that Dr. DiTullio's 2009 evaluation and Dr. Siegel's 2012 evaluation are reasonably consistent about the extent of her problems since 2009. However, Dr. Hymoff testified he could not conclude that the [plaintiff] had a severe mental impairment prior to Dr. DiTullio's report in 2009. He testified that one would expect that if a

> severe mental impairment existed, the [plaintiff] or her physician would have made more of an effort to get mental health treatment. Dr. Hymoff reiterated that considering the only occasional mention of depression in the medical records prior to 2009[,] the only thing that Dr. DiTullio and Dr. Siegel could have relied on in their reports was the [plaintiff's] subjective complaints. Dr. Hymoff testified there was nothing in the medical record prior to 2009, which would support the [plaintiff's] complaints of a severe mental impairment.

*Id*. at 502.

He went on to conclude that there was "little evidence that the [plaintiff] suffered any functional limitations from depression or other mental health disorder prior to her date last insured" and, "[t]o the extent that [she] experienced depression prior to the date last insured, there is nothing to establish any more than mild limitations in any of the B criteria." *Id*. at 503 (citation omitted).[8]

The administrative law judge erred in failing to obtain a PRTF from a psychologist or psychiatrist or complete one himself. Nonetheless, as counsel for the commissioner contended at oral argument, the error is harmless. While Dr. Hymoff did not complete a PRTF, his testimony was the equivalent. He testified, in effect, that there was insufficient evidence to demonstrate the existence of a severe mental impairment prior to the plaintiff's date last insured. *See id*. at 543-48. While he did state that he could not say that Drs. DiTullio and Siegel were right or wrong, he was clear that *he* did not perceive severe depression in the plaintiff prior to her date last insured and did not understand how Drs. DiTullio or Siegel did. *See id.* at 545 ('I can't say they're wrong, I can't say they're right, I'm just saying I didn't see things that I usually look for in doing this kind of work in medical records that document independently other than the

---

[8] The so-called "B criteria," part of the specialized psychiatric review technique, are used to assess the impact of a claimant's mental impairment(s) on activities of daily living, social functioning, and concentration, persistence, or pace, and whether the claimant has suffered any episodes of decompensation. *See Riley v. Astrue,* No. 06–95–B–W, 2007 WL 951424, at *8 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 18, 2007); 20 C.F.R. § 404.1520a(c).

person[']s statements about the severity of the depression."); *see also id*. at 547 ("I'm not comfortable, I do not feel I can even support ho[w] they reached the conclusion that it went back to 2006.").[9]

The administrative law judge, adopting that testimony, accurately translated it into a finding that the plaintiff had failed to demonstrate that she had more than mild limitations in the "B criteria," namely, activities of daily living, social functioning, concentration, persistence, or pace, and episodes of decompensation. *See id*. at 503; 20 C.F.R. § 404.1520a(c)(3)-(4) & (d)(1).

As counsel for the commissioner noted, this court found no reversible error in the absence of a PRTF in circumstances in which, as here, a medical expert who had reviewed the entire record testified that there was insufficient evidence to determine whether the plaintiff had a severe mental impairment as of the relevant date. *See Madden v. Barnhart*, No. 05-150-B-W, 2006 WL 1554600, at *2 (D. Me. June 1, 2006) (rec. dec., *aff'd* June 21, 2006) (reasoning that "[t]he medical expert and the administrative law judge applied the technique as much as they possibly could, given the lack of evidence, at the hearing and in the decision, respectively").

Moreover, the administrative law judge permissibly resolved a conflict among expert opinions by crediting the opinion of Dr. Hymoff over those of Drs. DiTullio and Siegel. *See Shaw v. Secretary of Health & Human Servs.*, No. 93-2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but leave ambiguities and inconsistencies to be sifted and weighed by the ALJ, who may, as here, use a consultative examination to help resolve uncertainties. The ALJ must evaluate all medical opinions from all sources in light of a non-exclusive list of possibly relevant factors. While

---

[9] At oral argument, the plaintiff's counsel underscored that Dr. Hymoff agreed that it was "not unusual for people with depression to essentially isolate themselves and resist treatment[,]" which would not be "inconsistent with anything we see in the record here[.]" Record at 544-45. Yet, Dr. Hymoff did not recant his opinion that he saw no severe mental impairment as of the plaintiff's date last insured.

generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record.") (citations omitted); *Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

As the administrative law judge observed, both the DiTullio and Siegel reports addressed the plaintiff's condition as of the date of examination in 2009 and 2012, respectively. *See id*. at 459-61, 907-12. The DiTullio report did not discuss her condition prior to the date of examination, *see id*. at 459-61, and Dr. Siegel merely stated that it was his opinion based on available historical material and his examination that the plaintiff's impairments and limitations had been present since on or before June 30, 2006, and had "*reportedly* been ongoing since that time[,]" *id*. at 912 (emphasis added). The administrative law judge justifiably found that this conflicted with the typed paragraph above each psychologist's signature indicating that the findings dated back to 2004 or 2006.[10]

---

[10] The plaintiff complains that the administrative law judge, as a layperson, was not competent to reject Drs. DiTullio's and Siegel's conclusions that her limitations dated to at least June 30, 2006. *See* Statement of Errors at 13. Yet, a judgment that an expert's opinion is unsupported by his report is well within the province of an administrative law judge. *See, e.g., Anderson v. Astrue,* No. 1:11–cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia,* judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citation and internal quotation marks omitted). In addition, in this case, the administrative law judge had the benefit of Dr. Hymoff's testimony that he did not feel comfortable with and could not support the conclusion of Drs. DiTullio and Siegel that the plaintiff's limitations had been present since at least June 30, 2006. *See* Record at 547.

To the extent that the DiTullio opinion relied on the plaintiff's claimed abdominal pain and bloating, the administrative law judge supportably rejected it as based on the plaintiff's subjective complaints and outside the realm of Dr. DiTullio's expertise.

Finally, the administrative law judge supportably found Dr. Siegel's opinion that the plaintiff had a marked limitation dating back to June 30, 2006, at odds with Dr. Siegel's own findings on examination, among them that (i) the plaintiff was "able to understand and follow at least moderately complex and detailed work rules and function independently at a similar level, although these general abilities *may be*, *to some degree*, *currently compromised* by a combination of ongoing depression, anxiety, and reported chronic pain[,]" (ii) she had "[n]o clear difficulties . . . with the maintenance of attention and concentration apart from some normative age-related decline however again, some degradation of these abilities is likely present secondary to emotional difficulties[,]" and (iii) her "ability to deal with work stressors is, *at this time*, compromised by difficulties with depression and anxiety." *Id*. at 911 (emphasis added).

In sum, (i) the administrative law judge committed no reversible error in failing to obtain a completed PRTF from an appropriate expert or complete one himself, (ii) the Hymoff testimony was not too speculative to stand as substantial evidence that the plaintiff had failed to demonstrate the existence of a severe mental impairment as of her date last insured, and (iii) the administrative law judge adequately addressed the DiTullio and Siegel opinions.[11]  Accordingly, there is no basis on which to disturb his finding that, as of her date last insured, her mental impairments were nonsevere.

---

[11] Indeed, the administrative law judge provided good reasons for rejecting the DiTullio and Siegel opinions, which is beyond what is required for an examining, as opposed to treating, source.  *See* 20 C.F.R. § 404.1527(c)(2) (commissioner will "always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion").

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for the proceedings not inconsistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge